## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **BROOKE HAYES and HEATHER RANDALL,** on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| v. | |
| **WRIGHT & FILIPPIS, LLC,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Brooke Hayes and Heather Randall, individually and on behalf of the Classes defined below of similarly situated persons ("Plaintiffs"), allege the following against Wright & Filippis, LLC ("Wright & Filippis" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

## <u>INTRODUCTION</u>

1.     Plaintiffs bring this class action against Wright & Filippis for its failure to properly secure and safeguard Plaintiffs' and other similarly-situated Wright & Filippis customers' (and current and former employees' and job applicants') names,

1

dates of birth, Social Security numbers, patient numbers, financial account numbers, health information, and other sensitive records from hackers.

2.     Wright & Filippis is a prosthetics and orthotics company based in Rochester Hills, Michigan, with various locations throughout Michigan, including in this District, that serves tens of thousands if not hundreds of thousands of customers in the state.

3.     On or about November 18, 2022, Wright & Filippis sent out data breach letters to individuals whose information was compromised as a result of a recent data security incident. On information and belief, the notice was sent to the company's customers, current employees, former employees, and job applicants.

4.     Based on the notice, at some time on or after January 28, 2022, Wright & Filippis detected unusual activity on some of its computer systems. In response, the company says that it terminated a ransomware attack and began an investigation of the incident. The Wright & Filippis investigation revealed that an unauthorized party had access to certain company files between January 26, 2022 and January 28, 2022 (the "Data Breach"). Yet, Wright & Filippis waited nearly 10 months, or until November 2022, to notify its customers, employees, former employees, and job applicants that they were at risk.

5.     As a result of this delayed response, Plaintiffs and Class Members had no idea for nearly 10 months that their Private Information had been compromised,

and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

6. Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves. This includes names, dates of birth, Social Security numbers, financial account numbers, and health insurance information (collectively the "Private Information") and additional personally identifiable information ("PII") that Wright & Filippis collected and maintained. Compromised information also includes other protected health information ("PHI") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

7. Armed with the Private Information and PHI accessed in the Data Breach and a head start, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, mining Class Members' Private Information and PHI when implementing sophisticated phishing attacks, using Class Members' information to obtain government benefits, and filing fraudulent tax returns using Class Members' information.

8. Therefore, Plaintiffs and Class Members have suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses,

and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

9.     Plaintiffs bring this class action lawsuit to address Wright & Filippis' inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and Class Members that their information had been subject to the unauthorized access and what type of information was accessed.

10.     The potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Wright & Filippis. Thus, Wright & Filippis was on notice that failing to take necessary steps to secure the Private Information left that Private Information vulnerable to an attack.

11.     On information and belief, Wright & Filippis failed to properly monitor the computer network and systems that housed the Private Information.

12.     Plaintiffs' and Class Members' identities are now at risk because of Wright & Filippis' negligent conduct, as the Private Information that Wright & Filippis collected and maintained is now likely in the hands of data thieves and unauthorized third-parties.

13.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

4

14.     Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Wright & Filippis' data security systems, future annual audits, and adequate credit monitoring services funded by Wright & Filippis.

## PARTIES

15.     Plaintiff Brooke Hayes is, and at all times mentioned herein was, an individual citizen of the State of Michigan, residing in the City of Battle Creek in Calhoun County. Plaintiff Hayes was a customer of Wright & Filippis.

16.     Plaintiff Heather Randall is, and at all times mentioned herein was, an individual citizen of the State of Michigan, residing in the City of Carleton in Monroe County. Wright & Filippis identified Ms. Randall as "a current or former employee or job applicant of Wright & Filippis" in a letter sent to her on November 18, 2022 notifying her of the Data Breach.

17.     Defendant Wright & Filippis is a prosthetics and orthotics company incorporated in Michigan with its principal place of business at Rochester Hills in Oakland County.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the

number of class members is over 100, many of whom have different citizenship from
Wright & Filippis. Indeed, according to the Texas Attorney General's website, more
than 1,500 Class Members reside in Texas. Thus, minimal diversity exists under 28
U.S.C. § 1332(d)(2)(A).

19.     This Court has jurisdiction over Wright & Filippis because it operates
in and is headquartered in this District.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1)
because a substantial part of the events giving rise to this action occurred in this
District. Wright & Filippis has harmed Class Members residing in this District,
including Plaintiff Randall. Wright & Filippis has multiple office locations in this
District and is headquartered in this District.

## WRIGHT & FILIPPIS COLLECTS HIGHLY SENSITIVE CUSTOMER INFORMATION

21.     Wright & Filippis is a prosthetics and orthotics company based in
Rochester Hills, Michigan. Founded in 1944, Wright & Filippis is one of the largest
family-owned providers of prosthetics, orthotics, and accessibility solutions in the
United States, serving thousands of customers in Michigan. Wright & Filippis
employs nearly 300 people and generates approximately $30 million in annual
revenue.

22.     As a condition of receiving prosthetics and orthotics services, Wright
& Filippis requires that its customers entrust it with highly sensitive personal

6

information. In the ordinary course of receiving service from Wright & Filippis, customers are required to provide sensitive personal and private information such as:

- Name
- Social Security number
- Date of birth
- Financial account numbers
- Health insurance information

23.    Wright & Filippis uses this information, *inter alia*, to provide prosthetics and orthotics to its customers.

24.    On information and belief, Wright & Filippis collects and maintains similar information regarding its current and former employees and job applicants, including names, dates of birth, Social Security numbers, driver's license numbers, and financial account numbers.

25.    Because of the highly sensitive and personal nature of the information Wright & Filippis acquires and stores with respect to its patients, in its privacy policy, Wright & Filippis promises its customers that it will not share their personal information with third parties: "We will not sell, distribute or lease your personal

information to third parties unless we have your permission or are required by law to do so."[1]

26. Further showing that the company knew it was obligated to protect the data entrusted to it, Wright & Filippis' online Privacy Policy makes the following assertion:

> Security – We are committed to ensuring that your information is secure. In order to prevent unauthorized access or disclosure, we have put in place suitable physical, electronic and managerial procedures to safeguard and secure the information we collect online.[2]

27. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Wright & Filippis assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

28. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and PHI.

---

[1] https://www.firsttoserve.com/privacy-policy (last visited Feb. 21, 2023).

[2] *Id.*

29.     Plaintiffs and Class Members relied on Wright & Filippis to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information.

## DATA BREACHES IN HEALTHCARE

30.     According to the Ponemon Institute and Verizon Data Breach Investigations Report, the health industry experiences more data breaches than any other sector.[3] Regular PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[4] However, PHI can sell for as much as $363 according to the Infosec Institute.[5] This is because one's personal health history cannot be changed, unlike credit card information.

31.     PHI has increased in value because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions. PHI can also be used to create fake insurance claims, allowing for the purchase and resale

---

[3] *Data Breaches: In the Healthcare Sector*, Center for Internet Security, *available at* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Feb. 21, 2023).

[4] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Feb. 21, 2023).

[5] *Data Breaches: In the Healthcare Sector*, Center for Internet Security, *available at* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Feb. 21, 2023).

of medical equipment. Some criminals use PHI to illegally gain access to prescriptions for their own use or resale.

## WRIGHT & FILIPPIS' DATA BREACH AND NOTICE TO PLAINTIFFS

32.    According to the company, around January 28, 2022, Wright & Filippis learned of unauthorized access to its computer systems that occurred between January 26, 2022 and January 28, 2022. The company claims that on or about May 2, 2022, it learned that an unauthorized individual or individuals accessed a cache of highly sensitive PII and PHI, including names, dates of birth, Social Security numbers, driver's license numbers, financial account numbers, and health insurance information.

33.    On or about November 18, 2022, about 10 months after Wright & Filippis learned of the Data Breach, and more than six months after learning that the Class's PII and PHI were accessed by cybercriminals, Wright & Filippis finally began to notify customers that its investigation identified that their Private Information was breached.

34.    Wright & Filippis delivered Data Breach Notification Letters to Plaintiffs and Class Members, alerting them that their highly sensitive PII and PHI had been exposed in a "cybersecurity attack."

35.    Wright & Filippis informed patients like Plaintiff Hayes that the Private Information that was accessed for them included: name, date of birth, patient

number, Social Security number, financial account number, and health insurance information. On information and belief, Wright & Filippis sent a similar generic letter to all of its patients affected by the Data Breach.

36.     Wright & Filippis informed current and former employees and job applicants that the Private Information that was accessed for them included: name, date of birth, Social Security number, driver's license number, and in some cases a financial account number. For those employees or applicants who were also Wright & Filippis patients, the Data Breach Notification Letters informed them that patient numbers and/or health insurance information may have been accessed. On information and belief, Wright & Filippis sent a similar generic letter to all current and former employees and job applicants affected by the Data Breach.

37.     The Data Breach Notification Letters included pages entitled "Recommended Steps to help Protect your Information," which listed generic steps that victims of data security incidents can take, such as getting a copy of a credit report or placing a fraud alert on a credit file. Other than offering 12-24 months of identity theft protection services that individuals would have had to affirmatively sign up for by February 18, 2023, and providing a phone number and website link for "assistance or for any additional questions," Wright & Filippis offered no other substantive steps to help victims like Plaintiffs and Class Members to protect themselves.

38.     Wright & Filippis had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

39.     Plaintiffs and Class Members provided their Private Information to Wright & Filippis with the reasonable expectation and mutual understanding that Wright & Filippis would comply with its obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of security breaches.

40.     Wright & Filippis' data security obligations were particularly important given the substantial increase in cyberattacks, including of medical service providers.

41.     Wright & Filippis knew or should have known that its electronic records would be targeted by cybercriminals.

## WRIGHT & FILIPPIS FAILED TO COMPLY WITH FTC GUIDELINES

42.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decisionmaking.

43.    In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

44.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.

45.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the

Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

46.    On information and belief, Wright & Filippis failed to properly implement basic data security practices. Wright & Filippis' failure to employ reasonable and appropriate measures to protect against unauthorized access to PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

47.    Wright & Filippis was at all times fully aware of its obligation to protect the PII and PHI of its customers and employees.

## WRIGHT & FILIPPIS FAILED TO COMPLY WITH INDUSTRY STANDARDS

48.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

49.    Some industry best practices that should be implemented by businesses like Wright & Filippis include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. On information and belief, Defendant failed to follow some or all of these industry best practices.

50.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; protecting communication systems; and training staff regarding these points. On information and belief, Defendant failed to follow some or all of these cybersecurity best practices, including failure to train its staff.

51.    On information and belief, Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), the Center for Internet Security's Critical Security Controls (CIS CSC), and the HIPAA Security Rule and Breach Notification Rule, which are all established standards in reasonable cybersecurity readiness. As a result, that opened the door to the cyber incident and causing the Data Breach.

## WRIGHT & FILIPPIS' SECURITY OBLIGATIONS

52.    Wright & Filippis breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly

maintain and safeguard its computer systems and data. Wright & Filippis' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

b.  Failing to adequately protect patients', employees', and job applicants' Private Information, PII, and PHI;

c.  Failing to properly monitor its own data security systems for existing intrusions;

d.  Failing to sufficiently train its employees regarding the proper handling of PII and PHI;

e.  Failing to ensure the confidentiality and integrity of PHI it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1).

f.  Failing to properly implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

g.  Failing to sufficiently implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

h.  Failing to adequately implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

i.  Failing to properly protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j.  Failing to properly protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

k.  Failing to ensure compliance with HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(4);

l.  Failing to adequately train all members of its workforce effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b);

m.  Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use

17

of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR § 164.304's definition of "encryption");

n.  Failing to fully comply with FTC guidelines for cybersecurity in violation of Section 5 of the FTCA; and

o.  Failing to adhere to industry standards for cybersecurity.

53.  As a result of computer systems in need of security upgrades, inadequate procedures for handling emails containing viruses or other malignant computer code, and/or employees who opened files containing the virus or malignant code that perpetrated the cyberattack, Wright & Filippis negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

54.  Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. Additionally, they now face an increased risk of fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with Wright & Filippis as customers, employees, or job applicants.

## **WRIGHT & FILIPPIS' PRACTICES VIOLATE HIPAA**

55.  HIPAA requires covered entities like Defendant to protect against reasonably anticipated threats to the security of sensitive PHI.

18

56.     Covered   entities   must   implement   safeguards   to   ensure   the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

57.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. § 1301, *et seq.* These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Wright & Filippis permitted to be stolen. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

58.     The Data Breach resulted from a combination of insufficiencies that demonstrate that Wright & Filippis failed to comply with safeguards mandated by HIPAA regulations.

59.     Given that HIPAA applied to Wright & Filippis, its customers reasonably expected that Wright & Filippis would safeguard their PHI and keep it confidential.

60.     Additionally, the HIPAA Data Breach Notification Rule, 45 C.F.R. §§ 164.400-414 requires a company to provide notice of a data breach to every impacted individual "without unreasonable delay and in no case later than 60 days following

discovery of the breach."[6] Wright & Filippis did not comply with this rule, as it waited nearly 10 months following the Data Breach to notify Plaintiffs and Class Members of the Data Breach.

<u>**DATA BREACHES, FRAUD, AND IDENTITY THEFT**</u>

61.     Cyberattacks are considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule: A breach under the HIPAA Rules is defined as "the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." 45 C.F.R. 164.40.10.

62.     The FTC hosted a workshop to discuss "informational injuries" which are injuries that consumers suffer from privacy and security incidents, such as data breaches or unauthorized disclosure of data.[7] Exposure of personal information that a consumer wishes to keep private may cause both market harm and non-market harm to the consumer, such as the ability to obtain or keep employment. Consumers'

---

[6] *Breach Notification Rule*, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last visited Feb. 21, 2023).

[7] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited Feb. 21, 2023).

loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

63.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

64.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity),

reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[8]

65.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

66.    Identity thieves can also use Social Security numbers or driver's license numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture, use the victim's name and Social Security number to obtain government benefits, or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, receive medical services in the victim's name, rent a house in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

67.    A study by the Identity Theft Resource Center[9] shows the multitude of harms caused by fraudulent use of PII:

---

[8] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited Feb. 21, 2023).

[9] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (Oct. 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited Feb. 21, 2023).



68.     Moreover, the value of Private Information is axiomatic. The consequences of cyberthefts include heavy prison sentences, so the fact that identity thieves attempt to steal identities notwithstanding these possible heavy prison sentences illustrates beyond a doubt that Private Information has considerable market value.

69.     Theft of PHI is gravely serious and can result in medical identity theft, where a thief uses the victim's information to see a doctor, get prescription drugs, buy medical devices, submit insurance claims, or get other medical care.[10] If the

---

[10] *What To Know About Medical Identity Theft*, Federal Trade Commission (May 2021), *available at* https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last visited Feb. 21, 2023).

thief's health information is mixed with the victim's health information, it can negatively impact the victim's health insurance benefits and credit.

70.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

71.     There may be a substantial time lag between when harm occurs and when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[11]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[11] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited Feb. 21, 2023).

72.     Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

73.     As a result, there is a strong probability that entire batches of stolen information have yet to be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their financial and medical accounts for many years to come.

74.     The medical industry has experienced disproportionally higher numbers of data theft events than other industries. Wright & Filippis knew or should have known this and should have strengthened its data and email handling systems accordingly.

## **PLAINTIFFS' AND CLASS MEMBERS' DAMAGES**

75.     Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

76.     Plaintiffs' Private Information, including sensitive PII and PHI, was compromised as a direct and proximate result of the Data Breach.

77.     As a direct and proximate result of Wright & Filippis' conduct, Plaintiffs and Class Members have suffered an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

78.    As a direct and proximate result of Wright & Filippis' conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

79.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as medical services billed in their names, loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

80.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information, as potential fraudsters could use that information to target their schemes more effectively to Plaintiffs and Class Members.

81.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

82.    The information that Wright & Filippis maintains regarding Plaintiffs and Class Members combined with publicly available information allows nefarious actors to assemble a detailed picture of Plaintiffs' and Class Members' history.

83.    Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Class Members who were Wright & Filippis customers, like Plaintiff Hayes, overpaid for a service that was intended to be accompanied by

26

adequate data security but was not. Part of the price Plaintiff Hayes and other Class Members paid to Wright & Filippis as customers was intended to be used by Wright & Filippis to fund adequate security of Wright & Filippis' computer property and protect Class Members' Private Information. Thus, Plaintiff Hayes and Class Members who were Wright & Filippis customers did not get what they paid for.

84.     Similarly, Class Members who were employees of Wright & Filippis were also damaged via benefit-of-the-bargain damages. Those employees provided service for Wright & Filippis with the expectation that Wright & Filippis would properly safeguard their Private Information. Thus, Plaintiff Randall and Class Members who were Wright & Filippis employees did not get what they signed up for.

85.     Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their accounts and records for misuse.

86.     Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

        a.  Finding fraudulent charges;

        b.  Canceling and reissuing credit and debit cards;

        c.  Purchasing credit monitoring and identity theft prevention;

d. Addressing their inability to withdraw funds linked to compromised accounts;

e. Taking trips to banks and waiting in line to obtain funds held in limited accounts;

f. Placing "freezes" and "alerts" with credit reporting agencies;

g. Spending time on the phone with or at a financial institution to dispute fraudulent charges;

h. Contacting financial institutions and closing or modifying financial accounts;

i. Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j. Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k. Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

87.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Wright & Filippis, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to making sure that the

storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

88.    As a direct and proximate result of Wright & Filippis' actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and either have suffered harm or are at an increased risk of future harm.

## CLASS ALLEGATIONS

89.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated (the "Class").

90.    Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

### Nationwide Class

All individuals in the United States who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

### Michigan Subclass

All residents of Michigan who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

91.    Excluded from each of the above Classes are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors,

and assigns. Also excluded are any judge to whom this case is assigned as well as their judicial staff and immediate family members.

92.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

93.     Each of the proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

94.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of nearly 900,000 customers, employees, and job applicants of Wright & Filippis whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Wright & Filippis' records, Class Members' records, publication notice, self-identification, and other means.

95.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a. Whether Wright & Filippis engaged in the conduct alleged herein;

        b. Whether Wright & Filippis' conduct violated the Michigan Consumer Protection Act, invoked below;

c.  When Wright & Filippis actually learned of the Data Breach and whether its response was adequate;

d.  Whether Wright & Filippis unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

e.  Whether Wright & Filippis failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.  Whether Wright & Filippis' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.  Whether Wright & Filippis' data security systems prior to and during the Data Breach were consistent with industry standards;

h.  Whether Wright & Filippis owed a duty to Class Members to safeguard their Private Information;

i.  Whether Wright & Filippis breached its duty to Class Members to safeguard their Private Information;

j.  Whether hackers obtained Class Members' Private Information via the Data Breach;

k.  Whether Wright & Filippis had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

l.  Whether Wright & Filippis breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

m.  Whether Wright & Filippis knew or should have known that its data security systems and monitoring processes were deficient;

n.  What damages Plaintiffs and Class Members suffered as a result of Wright & Filippis's misconduct;

o.  Whether Wright & Filippis' conduct was negligent;

p.  Whether Wright & Filippis' conduct was *per se* negligent;

q.  Whether Wright & Filippis was unjustly enriched;

r.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

s.  Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t.  Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

96. <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

97. <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

98. <u>Predominance</u>. Wright & Filippis has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Wright & Filippis' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

99. <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class

Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Wright & Filippis. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

100.    Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Wright & Filippis has acted or has refused to act on grounds generally applicable to the Class so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

101.    Finally, all members of the proposed Class are readily ascertainable. Wright & Filippis has access to the names and addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Wright & Filippis.

## CLAIMS FOR RELIEF

## COUNT I

## NEGLIGENCE

## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE MICHIGAN STATE SUBCLASS)

102.    Plaintiffs restate and reallege all of the allegations stated above and hereafter as if fully set forth herein.

34

103.    Wright & Filippis knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

104.    Wright & Filippis' duty included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

105.    Wright & Filippis knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and the Class Members and the importance of adequate security. Wright & Filippis was on notice because on information and belief, it knew or should have known that it would be an attractive target for cyberattacks, especially as a medical service provider.

106.    Wright & Filippis owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to it. Wright & Filippis's duties included, but were not limited to, the following:

      a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b.  To protect individuals' Private Information using reasonable and adequate security procedures and systems that are compliant with industry standards;

c.  To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d.  To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to the Michigan Consumer Protection Act;

e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.  To promptly notify Plaintiffs and Class Members of the Data Breach and to precisely disclose the types of information compromised.

107. Wright & Filippis' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant was bound by industry standards to protect confidential Personal Information.

108. Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Wright & Filippis owed them a duty of care to not subject them to an unreasonable risk of harm.

109.    Wright & Filippis, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Wright & Filippis' possession.

110.    Wright & Filippis, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

111.    Wright & Filippis, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised. Indeed, Wright & Filippis' much-delayed notification was non-complaint with the requirements of HIPAA. Wright & Filippis' nearly 10 month wait to notify Plaintiffs and Class Members was also a violation of the Michigan Identity Theft Protection Act, which requires that notification of a data breach occur "without unreasonable delay." Mich. Comp. Laws Ann. § 445.72(4).

112.    Wright & Filippis breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.  Failing to adequately monitor the security of its networks and systems;

c.  Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d.  Allowing unauthorized access to Class Members' Private Information;

e.  Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

f.  Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

113.  Wright & Filippis acted with reckless disregard for the rights of Plaintiffs and Class Members by failing to provide prompt and adequate individual notice of the Data Breach so that Plaintiffs and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

114.  Wright & Filippis had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Wright & Filippis

with their Private Information was predicated on the understanding that Wright & Filippis would take adequate security precautions. Moreover, only Wright & Filippis had the ability to protect its systems (and the Private Information that it stored on them) from attack.

115.   Wright & Filippis' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised.

116.   As a result of Wright & Filippis' ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

117.   Wright & Filippis' breaches of duty caused a foreseeable risk to Plaintiffs and Class Members that they would be harmed by suffering from identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

118.   As a result of Wright & Filippis' negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

119.   Wright & Filippis also had independent duties under state laws like Michigan's that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach. *See* Mich. Comp. Laws Ann. § 445.72(4). Wright & Filippis also had these duties under HIPAA.

120.   As a direct and proximate result of Wright & Filippis' negligent conduct, Plaintiffs and Class Members have suffered damages and are at imminent risk of further harm.

121.   The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

122.   The injury and harm that Plaintiffs and Class Members suffered was the direct and proximate result of Wright & Filippis' negligent conduct.

123.   Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

124.   In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Wright & Filippis to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT II

## NEGLIGENCE *PER SE*

## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE MICHIGAN STATE SUBCLASS)

125.   Plaintiffs restate and reallege the allegations in paragraphs 1-101 as if fully set forth herein.

126.   Pursuant to Section 5 of the FTCA, Wright & Filippis had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information, including PII and PHI, of Plaintiffs and Class Members.

127.   On information and belief, Wright & Filippis breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to: proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

128.   Plaintiffs and Class Members are within the class of persons that the FTCA is intended to protect.

129.   The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect Private Information. The FTC publications described above and the industry-standard cybersecurity measures also form part of the basis of Wright & Filippis' duty in this regard.

41

130.   Wright & Filippis violated the FTCA by failing to use reasonable measures to protect Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

131.   It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, including among medical service providers, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Personal Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Wright & Filippis' networks, databases, and computers that stored or contained Plaintiffs' and Class Members' Personal Information.

132.   Wright & Filippis' violations of the FTCA constitute negligence *per se*.

133.   Wright & Filippis is also an entity covered under HIPAA. Under HIPAA, Wright & Filippis had a duty to implement and maintain reasonable and appropriate administrative, technical, and physical safeguards to protect Plaintiffs' and Class Members' PHI.

134.   HIPAA required that Wright & Filippis: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of such PHI; (c) protect against reasonably anticipated,

impermissible uses or disclosures of such PHI; and (d) ensure that its employees would satisfy HIPAA's security requirements. 45 C.F.R. § 164.102, *et seq*.

135.   Wright & Filippis violated HIPAA by failing to provide for adequate computer systems and data security practices that would properly safeguard its customers' PHI.

136.   Plaintiffs and Class Members are within the class of persons that HIPAA was intended to protect.

137.   Additionally, Wright & Filippis was non-compliant with the HIPAA Data Breach Notification Rule, which requires a company to provide notice of a data breach to every impacted individual without unreasonable delay and in no case later than 60 days following discovery of the breach. Wright & Filippis waited more than ten months following the Data Breach to notify Plaintiffs and Class Members of the Data Breach. Plaintiffs and Class Members should have been notified earlier in order to provide an opportunity to mitigate damages.

138.   Defendant's violations of HIPAA constitutes *negligence per se*.

139.   The harm that has occurred as a result of Wright & Filippis' negligent conduct is the type of harm that the FTCA and HIPAA are intended to guard against.

140.   Plaintiffs' and Class Members' Private Information constitutes personal property that was stolen due to Wright & Filippis' negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

43

141.   As a direct and proximate result of Wright & Filippis' negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information (including PII and PHI) because of the Data Breach, including but not limited to damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

142.   Wright & Filippis breached its duties to Plaintiffs and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

143.   As a direct and proximate result of Wright & Filippis' negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

144.   In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Wright & Filippis to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT III

## BREACH OF CONTRACT

## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE MICHIGAN STATE SUBCLASS)

145.   Plaintiffs restate and reallege the allegations in paragraphs 1-101 as if fully set forth herein.

146.   Class Members who were Wright & Filippis customers entered into a valid and enforceable contract through which they paid money to Wright & Filippis in exchange for services. That contract included promises by Defendant to secure, safeguard, and not disclose Private Information.

147.   Wright & Filippis' Privacy Policy memorialized the rights and obligations of Wright & Filippis and its customers. This document was provided to Class Members who were Wright & Filippis customers in a manner in which and during a time when it became part of the agreement for services.

148.   In the Privacy Policy, Wright & Filippis commits to protecting the privacy and security of personal information and promises to never share customer information except under certain limited circumstances.

149.   Class Members who were Wright & Filippis customers fully performed their obligations under their contracts with Wright & Filippis.

150.   However, Wright & Filippis did not secure, safeguard, and/or keep private their customers' PII and PHI, and therefore Wright & Filippis breached its

45

contract with Plaintiff Hayes and Class Members who were Wright & Filippis customers.

151.   Wright & Filippis allowed third-parties to access, copy, and/or transfer its customers' PII and PHI without permission. Therefore, Wright & Filippis breached the Privacy Policy with its customers.

152.   Wright & Filippis' failure to satisfy its confidentiality and privacy obligations resulted in Wright & Filippis providing services to its customers that were of a diminished value.

153.   As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein.

154.   In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Wright & Filippis to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT IV

## BREACH OF IMPLIED CONTRACT

## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE MICHIGAN STATE SUBCLASS)

155.   Plaintiffs restate and reallege the allegations in paragraphs 1-101 as if fully set forth herein.

46

156.   This Count is pleaded in the alternative to Count III above.

157.   Wright & Filippis provides prosthetics and orthotics services to Plaintiff Hayes and Class Members who are Wright & Filippis customers. These customers formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by paying for goods and services from Defendant.

158.   Through Defendant's sale of goods and services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Private Information in accordance with Wright & Filippis' policies, practices, and applicable law, including HIPAA.

159.   As consideration, Wright & Filippis customers paid money to Wright & Filippis for prosthetics and orthotics services, and turned over valuable PII and PHI to Defendant. Accordingly, Class Members who were Wright & Filippis customers bargained with Wright & Filippis to securely maintain and store their Private Information.

160.   Consumers of healthcare value their privacy, the privacy of their dependents, and the ability to keep their Private Information and PHI associated with obtaining healthcare private. To customers, healthcare that does not adhere to industry standard data security protocols to protect Private Information is fundamentally less useful and less valuable than healthcare that adheres to industry

standard data security protocols. Plaintiffs and Class Members would not have entrusted their Private Information to Wright & Filippis and entered into these implied contracts without an understanding that their Private Information would be safeguarded and protected, and would not have entrusted their Private Information to Wright & Filippis in the absence of an implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

161.   Plaintiff Randall and Class Members who are or were Wright & Filippis employees formed an implied contract with Defendant regarding providing their services for Defendant in return for the proper safeguarding of their PII and PHI.

162.   In entering into such implied contracts, Class Members reasonably believed and expected that Wright & Filippis' data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards. Customers who paid money to Wright & Filippis reasonably believed and expected that it would use part of those funds to obtain adequate data security. Wright & Filippis failed to do so.

163.   Under the implied contracts, Wright & Filippis promised and was obligated to protect Plaintiffs' and Class Members' PII and PHI. In exchange, Wright & Filippis customers agreed to pay money for these services and to turn over their Private Information to Wright & Filippis.

164.    Additionally, Wright & Filippis employees and former employees understood that, as a term of their employment, Wright & Filippis would properly safeguard their PII and PHI.

165.    Wright & Filippis violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information. Wright & Filippis did not comply with industry standards, standards of conduct embodied in statutes like HIPAA and Section 5 of the FTCA, or otherwise protect Plaintiffs' and Class Members' Private Information, as set forth above.

166.    Plaintiffs and Class Members have been damaged by Wright & Filippis' conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT V

## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

## (ON BEHALF OF PLAINTIFFS AND THE MICHIGAN STATE SUBCLASS)

167.    Plaintiffs restate and reallege the allegations in paragraphs 1-101 as if fully set forth herein.

168.    As fully alleged above, Defendant engaged in unfair and deceptive acts and practices in violation of the Michigan Consumer Protection Act. The Michigan Consumer Protection Act is intended to protect Michigan consumers from unfair,

unconscionable, or deceptive methods, acts, or practices in conducting trade or commerce.

169.   Wright & Filippis is based in Michigan and it transacts with Michigan consumers.

170.   Reasonable   individuals   would   be   misled   by   Defendant's misrepresentations and/or omissions concerning the security of their PII and PHI because they assume companies that collect PII and PHI from customers will properly safeguard that PII and PHI in a manner consistent with industry standards and practices.

171.   Defendant did not inform its customers that it failed to properly safeguard their Private Information, thus misleading Plaintiffs and Class Members in violation of Mich. Comp. Laws Ann. §445.901, *et seq*. Such misrepresentation was material because Class members entrusted Defendant with their Private Information.

172.   Had Plaintiffs and Class Members known of Defendant's failure to maintain adequate security measures to protect their Private Information, Plaintiffs and Class Members would not have entrusted their Private Information to Defendant.

173.   Wright & Filippis also engaged in deceptive trade practices in violation of the Michigan Consumer Protection Act. Wright & Filippis' deceptive trade practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class Members' Private Information;

b. Misrepresenting to consumers that it would protect the privacy and confidentiality of Plaintiffs' and Class Members' Private Information by implementing and maintaining reasonable security and privacy measures;

c. Failing to identify foreseeable security and privacy risks or to address and correct identified security and privacy risks;

d. Failing to comply with and misrepresenting to consumers that it would comply with statutes pertaining to the security of Plaintiffs' and Class Members' PII and PHI, including the FTCA and HIPAA;

e. Failing to timely and adequately notify Plaintiffs and Class Members of the Data Breach and the specific Private Information that was subject to the Data Breach; and

f. Concealing and/or omitting that it did not reasonably or adequately secure Plaintiffs' and Class Members' PII and PHI in compliance with its statutory duties.

174. Defendant's representations and omissions were material because they were likely to deceive reasonable customers about the adequacy of Wright &

Filippis' data security and ability to protect the confidentiality of customers' Private Information.

175.   Defendant intended to mislead Plaintiffs and Class Members in order to have them rely on its misrepresentations and omissions.

176.   If Wright & Filippis had disclosed to Plaintiffs and Class Members that its data systems were not secure, Defendant would have been forced to adopt reasonable security measures in order to continue in business.

177.   Wright & Filippis was trusted with sensitive PII and PHI from hundreds of thousands of customers. Defendant accepted the responsibility of maintaining this data, but it kept secret from the public, Plaintiffs, and Class Members the fact that its data security measures were inadequate.

178.   Wright & Filippis customers acted reasonably in relying on Wright & Filippis to keep their Private Information secure because Wright & Filippis represented that it would maintain customers' data securely.

179.   As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, and risk of increased and imminent fraud and identity theft.

180.   Class Members are likely to be damaged by Wright & Filippis' ongoing deceptive trade practices.

181.   Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including damages or restitution, injunctive or other equitable relief, and attorneys' fees and costs.

182.   Accordingly, pursuant to Mich. Comp. Law Ann. § 445.901, *et seq.*, Plaintiffs and Class Members are entitled to recover their actual damages, including (a) damage to the value of their Private Information; (b) violation of Plaintiffs' and Class Members' privacy rights; (c) increased and imminent risk of identity theft or fraud; and (d) other consequential and incidental damages.

183.   Given the nature of Defendant's conduct, Plaintiffs and Class Members are entitled to all available statutory, treble, and punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Defendant's conduct.

## COUNT VII

## UNJUST ENRICHMENT

## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE MICHIGAN STATE SUBCLASS)

184.   Plaintiffs restate and reallege the allegations in paragraphs 1-101 as if fully set forth herein.

185.   This count is pleaded in the alternative to Counts III and IV above.

186. Wright & Filippis customers conferred a benefit on Wright & Filippis by paying for products and services that should have included cybersecurity protection to protect their Personal Information which they did not receive. Similarly, Wright & Filippis employees conferred a benefit on Wright & Filippis by providing services to Wright & Filippis that should have resulted in proper cybersecurity protection to protect employees' Private Information which they did not receive.

187. Wright & Filippis has retained the benefits of its unlawful conduct, including the amounts received for cybersecurity practices that it did not provide. Due to Wright & Filippis' conduct alleged herein, it would be unjust and inequitable under the circumstances for Wright & Filippis to be permitted to retain the benefit of its wrongful conduct.

188. Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Wright & Filippis and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Wright & Filippis from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiffs and Class Members may seek restitution or compensation.

189. Plaintiffs and Class Members may not have an adequate remedy at law against Wright & Filippis, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT VIII

## DECLARATORY JUDGMENT

## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE MICHIGAN STATE SUBCLASS)

190.   Plaintiffs restate and reallege the allegations in paragraphs 1-101 as if fully set forth herein.

191.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, this Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

192.   Wright & Filippis owes a duty of care to Plaintiffs and Class Members, which required it to adequately secure Private Information.

193.   Wright & Filippis still possesses Private Information regarding Plaintiffs and Class Members.

194.   Plaintiffs allege that Wright & Filippis' data security measures remain inadequate. Furthermore, Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their Private Information. The risk remains that further compromises of their Private Information will occur in the future.

195.   Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.  Wright & Filippis owes a legal duty to secure individuals' Private Information and to timely notify its customers and employees of a data breach under the common law and Section 5 of the FTCA;

b.  Wright & Filippis' existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect customers' and employees' Private Information; and

c.  Wright & Filippis continues to breach this legal duty by failing to employ reasonable measures to secure customers' and employees' Private Information.

196.  This Court should also issue corresponding prospective injunctive relief requiring Wright & Filippis to employ adequate security protocols consistent with legal and industry standards to protect customers' and employees' Private Information, including the following:

a.  Order Wright & Filippis to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

b.  Order that to comply with Defendant's explicit or implicit contractual obligations and duties of care, Wright & Filippis must

implement and maintain reasonable security measures, including, but not limited to:

i.   engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Wright & Filippis' systems on a periodic basis, and ordering Wright & Filippis to promptly correct any problems or issues detected by such third-party security auditors;

ii.  engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training its security personnel regarding any new or modified procedures;

iv.  segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Wright & Filippis systems;

v.   conducting regular database scanning and security checks;

vi.  routinely and continually conducting internal training and education to inform internal security personnel how to identify

and contain a breach when it occurs and what to do in response to a breach; and

vii.    meaningfully educating its customers and employees about the threats they face with regard to the security of their Private Information, as well as the steps they must take to protect themselves.

197.    If an injunction is not issued, Plaintiffs will suffer irreparable injury and lack an adequate legal remedy to prevent another data breach at Wright & Filippis. The risk of another such breach is real, immediate, and substantial. If another breach at Wright & Filippis occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

198.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Wright & Filippis if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other related damages. On the other hand, the cost of Wright & Filippis' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal and Wright & Filippis has a pre-existing legal obligation to employ such measures.

199.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Wright & Filippis, thus preventing future injury to

Plaintiffs and customers and employees whose Private Information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, seek the following relief:

a.  An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Classes requested herein;

b.  Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.  An order instructing Wright & Filippis to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.  An order requiring Wright & Filippis to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED:  February 21, 2023

Respectfully submitted,

/s/ Steven D. Cohen

**SIRI & GLIMSTAD LLP**
Mason A. Barney (to be admitted)
Steven D. Cohen
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: scohen@sirillp.com